UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23335-CIV-GAYLES/OTAZO-REYES

AST & SCIENCE LLC,

    Plaintiff-Counterclaim Defendant,

v.

DELCLAUX PARTNERS SA,

    Defendant-Counterclaim Plaintiff.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant-Counterclaim Plaintiff Delclaux Partners SA's ("Defendant" or "Delclaux") Motion for Summary Judgment (hereafter, "Delclaux's Motion for Summary Judgment") [D.E. 70];[1] and Plaintiff-Counterclaim Defendant AST & Science LLC's ("Plaintiff" or "AST") Corrected Motion for Summary Judgment (hereafter, "AST's Corrected Motion for Summary Judgment") [D.E. 74]. These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 38]. The undersigned held a hearing on these matters on August 3, 2022 (hereafter, "Hearing") [D.E. 101]. For the reasons set forth below, the undersigned respectfully recommends that Delclaux's Motion for Summary Judgment be DENIED, and that AST's Corrected Motion for Summary Judgment be GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 11, 2020, AST commenced this action, asserting a single claim for breach of contract against Delclaux for its alleged violations of the parties' finder's fee agreement (hereafter,

---

[1] Delclaux also filed an unredacted version of its Motion for Summary Judgment [D.E. 92, filed under seal].

"Finder's Fee Agreement"). See Compl. [D.E. 1]. AST alleges that, in rendering services under the Finder's Fee Agreement, Delclaux exceeded the scope of a finder's role and impermissibly acted as an unregistered broker-dealer, thereby contravening the Finder's Fee Agreement and securities law. Id. ¶¶ 23, 39–43. Specifically, AST contends that Delclaux provided certain services without registering with the Securities and Exchange Commission ("SEC") and becoming a member of the Financial Industry Regulatory Authority ("FINRA") and thus breached Sections 1 and 6 of the Finder's Fee Agreement, which provide, in pertinent part, as follows:

> 1. <u>Role of Finder</u>. . . . In no event shall [Delclaux] perform any act in connection with [the Finder's Fee Agreement], which (i) would require [Delclaux] to be registered as an investment advisor or broker-dealer or (ii) is in violation of any state or federal securities laws in the United States of America or any other relevant securities laws in other jurisdictions.
> . . .
> 6. <u>Representations of Finder</u>. [Delclaux] covenants, represents and warrants to AST that [Delclaux] has and will maintain all licenses, permits and other authorizations required by applicable laws, rules or regulations in order to perform the services hereunder, and [Delclaux] will conduct its activities in connection with its engagement hereunder in compliance with all applicable securities and other laws, rules and regulations. . . .

See Finder's Fee Agreement [D.E. 1-1 at 2, 4]; see also Compl. [D.E. 1 ¶¶ 23, 25]. As remedies for Delclaux's alleged breaches, AST seeks, in part, monetary damages and "disgorgement of all fees paid by AST to Delclaux under the [Finder's Fee Agreement]". See Compl. [D.E. 1 at 10].

On December 29, 2020, Delclaux filed its Amended Answer and Affirmative Defenses and Counterclaims (hereafter, "Amended Counterclaim") [D.E. 17]. In its Amended Counterclaim, Delclaux alleges that it lawfully performed under the Finder's Fee Agreement by introducing AST to an investment bank, LionTree, and that, pursuant to Section 2 of the Finder's Fee Agreement, AST was obligated to pay Delclaux fees "if [AST] raised money from certain entities within a one year tail period of AST's termination of its agreement with LionTree" (hereafter, "LionTree Agreement"). Id. ¶¶ 63–65. This tail period in the LionTree Agreement

contemplated the payment of fees to LionTree "for transactions resulting from agreements entered into [by AST] during the first 180 days following [] termination" of the LionTree Agreement (hereafter, "First Tail") and the payment of fees to LionTree "for transactions [entered into by AST] occurring during the following 12 month period . . . or resulting from acts during [that period]" (hereafter, "Second Tail"). Id. ¶ 88. Correspondingly, Section 2(b) of the Finder's Fee Agreement provides that:

> [a]s compensation for its services hereunder, [Delclaux] shall receive an additional fee which will be calculated as the investment banking fees which become payable to [LionTree] at the closing of a Financing multiplied by 17.65 percent (17.65%) . . . . If no amounts become due or payable to [LionTree] in connection with a Financing and the [LionTree Agreement] is terminated, [Delclaux] will not be entitled to receive [this fee].

See Finder's Fee Agreement [D.E. 1-1 at 3].[2] Delclaux claims that, although AST did raise funds during the LionTree Agreement's tail periods, AST "failed and refused to pay to Delclaux the fees due to be paid to Delclaux" by operation of the First and Second Tails, and thus breached the Finder's Fee Agreement. See Amended Counterclaim [D.E. 17 ¶¶ 66, 151–55].

On January 7, 2021, AST filed a Motion to Dismiss Defendant's Amended Counterclaim [D.E. 21], which the Court denied on August 17, 2021 [D.E. 49]. AST then filed its Answer and Affirmative Defenses to the Amended Counterclaim [D.E. 50]. On June 9, 2022, Delclaux filed its Motion for Summary Judgment [D.E. 70]. In its Motion for Summary Judgment, Delclaux argues that it is entitled to summary judgment on both AST's Complaint and Delclaux's Amended Counterclaim for the following reasons:

> ➢ AST's claim for breach of contract and disgorgement of fees should be dismissed because Delclaux earned its fees by properly acting as a finder, which did not require Delclaux to be registered as a broker;

---

[2] The Finder's Fee Agreement defines "Financing" as follows: "AST is a satellite technology company that is currently marketing a round of financing (the "Financing") which its [sic] expects to close no later than the end of the second quarter of 2019." See Finder's Fee Agreement [D.E. 1-1 at 1].

3

> ➤ AST owes Delclaux fees pursuant to the First Tail because AST entered into non-disclosure agreements with non-parties Vodafone, American Tower, Rakuten, and Samsung during the First Tail that resulted in investment transactions;
>
> ➤ AST owes Delclaux fees pursuant to the Second Tail because during the term of the LionTree Agreement, AST and/or LionTree contacted or attempted to contact non-parties Vodafone, Samsung, and Rakuten, who invested in AST prior to the end of the Second Tail;
>
> ➤ AST owes Delclaux fees under a separate tail provision in the LionTree Agreement (hereafter, "Third Tail") because AST raised money from New Providence Acquisition Corp. (hereafter, "New Providence") but failed to offer LionTree its option to work and earn a fee as a financial advisor on the transaction; and
>
> ➤ AST generally owes Delclaux fees because the LionTree Agreement was never properly terminated.

See Delclaux's Motion for Summary Judgment [D.E. 70].

Thereafter, AST filed its Statement of Undisputed Material Facts [D.E. 72] and Corrected Motion for Summary Judgment [D.E. 74]. In its Corrected Motion for Summary Judgment, AST argues that it is entitled to summary judgment on Delclaux's Amended Counterclaim because LionTree has not pursued fees from AST and, therefore, the condition precedent to Delclaux's recovery of fees under the Finder's Fee Agreement has not been satisfied; and, alternatively, the activity identified by Delclaux does not trigger a right to fees under the First or Second Tails. See AST's Corrected Motion for Summary Judgment [D.E. 74].[3]

Delclaux then filed its Corrected Statement of Undisputed Facts [D.E. 76] and Response in Opposition to AST's Corrected Motion for Summary Judgment (hereafter, "Delclaux's Response") [D.E. 77]. On June 23, 2022, AST filed its Response in Opposition to Delclaux's Motion for Summary Judgment (hereafter, "AST's Response") [D.E. 80]; and its Opposition to Delclaux's Corrected Statement of Undisputed Facts (hereafter, "AST's Response Statement")

---

[3] As discussed below, AST challenges as procedurally improper Delclaux's summary judgment request for fees under the Third Tail.

4

[D.E. 81]. On June 29, 2022, Delclaux filed its Corrected Response to AST's Statement of Undisputed Material Facts and Statement of Additional Undisputed Facts in Opposition to AST's Corrected Motion for Summary Judgment (hereafter, "Delclaux's Response Statement") [D.E. 84].

On June 30, 2022, Delclaux filed its Reply in Support of its Motion for Summary Judgment (hereafter, "Delclaux's Reply") [D.E. 86] and its Reply to AST's Response Statement (hereafter, "Delclaux's Reply Statement") [D.E. 87]; and AST filed its Reply in Support of its Corrected Motion for Summary Judgment (hereafter, "AST's Reply") [D.E. 88] and its Reply to Delclaux's Response Statement (hereafter, "AST's Reply Statement") [D.E. 89]. On July 21, 2022, pursuant to the undersigned's Order Granting AST's Motion for Leave to File Sur-Replies [D.E. 98], AST filed a Sur-Reply to Delclaux's Motion for Summary Judgment (hereafter, "AST's Sur-Reply") [D.E. 100]. Thus, Delclaux's Motion for Summary Judgment as to AST's Complaint and its own Amended Counterclaim, as well as AST's Corrected Motion for Summary Judgment as to Delclaux's Amended Counterclaim, are fully briefed and ripe for ruling.

## **APPLICABLE LAW**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (hereafter "Rule 56(a)") "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. Sept. 23, 2019) (quoting Anderson, 477 U.S. at 248). The movant must support his assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the non-moving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). Courts "resolve factual controversies in favor of the nonmoving party [] only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

## **DISCUSSION**

As noted above, Delclaux moves for summary judgment on AST's Complaint on the grounds that "Delclaux earned [its] fee by finding LionTree and because Delclaux at all times worked only as a finder who was not required to be registered under the United States Securities Laws." See Delclaux's Motion for Summary Judgment [D.E. 70 at 15]. Delclaux further argues that it is entitled to summary judgment on its Amended Counterclaim because it is owed fees by operation of the purportedly unambiguous First Tail, Second Tail, and Third Tail (collectively, "Tail Provisions"), which Delclaux claims survived AST's attempt to terminate the LionTree Agreement. Id. at 9–15.

However, in its Corrected Motion for Summary Judgment, AST contends that Delclaux is not entitled to any of the fees it seeks in the Amended Counterclaim because LionTree has not pursued its own fees from AST under the LionTree Agreement—which AST contends is a necessary condition precedent to Delclaux's recovery of fees under the Finder's Fee Agreement. See AST's Corrected Motion for Summary Judgment [D.E. 74 at 14–16]. Alternatively, AST

6

argues that the Tail Provisions are ambiguous and that, under its proposed and unrebutted interpretation, AST does not owe Delclaux fees because the First and Second Tails were not triggered by any of the activity Delclaux identifies as sufficient to entitle it to fees. Id. at 16–25.[4]

As discussed below, the undersigned concludes that issues of fact exist with respect to whether Delclaux acted beyond the scope of a finder and breached the parties' Finder's Fee Agreement, thereby making summary judgment in favor of Delclaux on AST's Complaint improper. Furthermore, as to Delclaux's Amended Counterclaim, the undersigned concludes that, as a matter of law, Delclaux is not entitled to the fees it seeks to recover under the Tail Provisions. Accordingly, the undersigned concludes that Delclaux's Motion for Summary Judgment should be denied, and AST's Corrected Motion for Summary Judgment should be granted.

**A. Delclaux is not entitled to summary judgment on AST's Complaint.**

With respect to its request for summary judgment on AST's claim for breach of the Finder's Fee Agreement, Delclaux argues that it "earned [its] fee by finding LionTree and . . . at all times worked only as a finder who was not required to be registered under the United States Securities Laws." See Delclaux's Motion for Summary Judgment [D.E. 70 at 15]. Specifically, Delclaux argues that:

> [It] did not negotiate the terms of any of the financings resulting in fees, and did not provide any investment banking services. Delclaux merely introduced [AST to] LionTree, and LionTree then provided the investment banking services under which the fees became due and payable. Delclaux [] never drafted or commented on any term sheets or business plans and did not participate in any investment discussions and did not play any role in negotiating any financing.

---

[4] In its Response to Delclaux's Motion for Summary Judgment, AST also points out that Delclaux failed to include its claim for fees under the Third Tail in its Amended Counterclaim, thereby rendering Delclaux's request for summary judgment for Third Tail related fees procedurally improper. See AST's Response [D.E. 80 at 20].

7

<u>Id.</u>  Delclaux further contends that it never drafted any business plans, marketing materials, documents, memoranda, or term sheets on behalf of or related to AST; performed a valuation of AST; offered for sale any specific securities or accessed confidential information related to AST; negotiated the terms of any financings related to AST; provided investment banking or brokerage services to AST; or had contact with non-parties related to their investments in AST.  <u>See</u> Delclaux's Corrected Statement of Undisputed Facts [D.E. 76 ¶¶ 58–74].  Thus, Delclaux argues that, because it did not perform beyond the scope of a finder, it is entitled to summary judgment on AST's Complaint.

However, AST has identified record evidence giving rise to factual disputes regarding whether and to what extent Delclaux may have exceeded the terms of the Finder's Fee Agreement by acting as an unregistered broker-dealer in its communications with prospective investors.  AST argues that, although Delclaux is not registered with the SEC or with the Office of Financial Regulation of Florida's Financial Services Commission and is also not a member of FINRA,

> Delclaux contacted potential investors to gauge their interest in investing in AST, [] sent written materials to potential investors, [] coordinated meetings, facilitated the execution of preliminary contracts, [] had telephone and e-mail communications, and [] attended in-person meetings with potential investors . . . . Overall, Delclaux solicited at least nine different potential investors.

<u>See</u> AST's Response [D.E. 80 at 18].  AST also challenges several of Delclaux's purportedly undisputed facts, contending that Delclaux actively tried to persuade potential investors to purchase AST's securities; provided advice to AST and potential investors related to AST's valuation; facilitated access to a data room for potential investors; acted as a broker without the proper licensing; and served a significant advisory role for AST on several investments.  <u>See</u> AST's Response Statement [D.E. 81 ¶¶ 58, 62, 65–67, 70–71, 73–74].  AST further posits that these activities are "beyond the scope of a mere finder"; hence, "there is clearly a genuine dispute of

8

material fact as to whether Delclaux breached the [Finder's Fee] Agreement" by undertaking these activities in an unregistered capacity.  See AST's Response [D.E. 80 at 18–19].

Viewing all evidence and drawing all reasonable inferences in favor of AST, the undersigned concludes that genuine issues of material fact as to whether Delclaux's actions were solely those of a finder preclude granting Delclaux's Motion for Summary Judgment on AST's claim for breach of the Finder's Fee Agreement.

**B.  Only AST is entitled to summary judgment on Delclaux's Amended Counterclaim.**

As noted above, AST and Delclaux both seek summary judgment on Delclaux's Amended Counterclaim.

In its Motion for Summary Judgment, Delclaux divides its counterclaim for finder's fees into the following components: fees pursuant to the First Tail; fees pursuant to the Second Tail; and fees pursuant to the Third Tail.  See Delclaux's Motion for Summary Judgment [D.E. 70 at 7–8].  Delclaux argues that the Tail Provisions are clear and unambiguous, and that specific activity has triggered its right to fees under each provision.  Id.  Delclaux further claims that the Tail Provisions survived AST's purported attempt to terminate the LionTree Agreement and thus remain in effect.  Id. at 8.

Conversely, AST argues that Section 2(b) of the Finder's Fee Agreement creates a right to fees that is contingent on fees becoming due and payable to LionTree under the LionTree Agreement.  See AST's Corrected Motion for Summary Judgment [D.E. 74 at 14–16].  And, given that LionTree has not pursued its right to fees under the LionTree Agreement, AST further argues that the condition precedent to Delclaux's recovery under the Finder's Fee Agreement has not been satisfied and that Delclaux is therefore not entitled to any fees.  Id.  Additionally, AST argues that the Tail Provisions are ambiguous and that, under AST's proposed interpretation, none of the

9

activity Delclaux identifies is sufficient to trigger Delclaux's right to fees under any one of the Tail Provisions. Id. at 23–25. Finally, AST submits that Delclaux cannot argue on summary judgment that it is entitled to fees under the Third Tail in the LionTree Agreement, given that Delclaux did not include this claim in its Amended Counterclaim. See AST's Response [D.E. 80 at 20].[5]

The parties' arguments with respect to Delclaux's right to recover fees hinge on the language in Section 2(b) of the Finder's Fee Agreement. Delclaux contends that the sole triggering event for its fees is the "closing of any financing transaction covered by the agreements", see Delclaux's Response [D.E. 77 at 10], whereas AST argues that "evidence that a legal obligation to pay fees to LionTree [must first be] established or [] pursued by LionTree before Delclaux can recover." See AST's Reply [D.E. 88 at 8].

A plain reading of the Finder's Fee Agreement supports AST's interpretation of Section 2(b). The predicate for Delclaux's recovery of fees under the Finder's Fee Agreement is an amount first becoming due or payable to LionTree under the LionTree Agreement. Indeed, Section 2(b) explicitly states that "[Delclaux] shall receive [a] fee which will be calculated as [a percentage of] the investment banking fees **which become payable to [LionTree]** at the closing of a Financing" and, conversely, that "[i]f no amounts **become due or payable to [LionTree]** in connection with a Financing and the [LionTree Agreement] is terminated, [Delclaux] will not be entitled to receive" its fees. See Finder's Fee Agreement [D.E. 1-1 at 3] (emphasis added). Moreover, the other language in the Finder's Fee Agreement and the LionTree Agreement invoked by Delclaux, see

---

[5] There is no mention in the Amended Counterclaim of AST's relationship to New Providence, the language of the Third Tail, or Delclaux's position with respect thereto. In light of this procedural fact, Delclaux's demand for fees as a matter of law pursuant to the Third Tail wholly fails and requires no further discussion. Parmenter v. Aetna Life Ins. Co., No. 11-CV-80227, 2012 WL 13018590, at *5 (S.D. Fla. Oct. 16, 2012) ("An assertion of a new claim is not proper at the summary judgment stage.") (citing Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1313 (11th Cir. 2004)).

Delclaux's Response [D.E. 77 at 10–11], does not modify Section 2(b).

Furthermore, Delclaux's citation to a single email from LionTree's Ehren Stenzler to Thomas Severson, AST's Chief Operating Officer, wherein Mr. Stenzler expresses his belief that certain contacts with Vodafone and Samsung satisfied the terms of the Second Tail, see Delclaux's Response [D.E. 77 at 12], does not constitute undisputed evidence that an amount is due and payable to LionTree under the LionTree Agreement.  Moreover, AST challenges the import of this email in its Reply, arguing that Delclaux omitted the remainder of the correspondence between LionTree and AST wherein AST "explained its position as to why LionTree's" suggested activity did not trigger the Second Tail.  See AST's Reply [D.E. 88 at 13].  AST further contends that it is undisputed that "LionTree never raised the issue again, did not send any invoice to AST, and never initiated any proceedings to seek fees associated with" the transactions after receiving this explanation.  Id.

Thus, in the absence of any record evidence that fees are due and payable to LionTree under the Tail Provisions, AST is entitled to judgment as a matter of law on Delclaux's Amended Counterclaim for fees.  Notwithstanding the dispositive nature of this conclusion, the undersigned further discusses the parties' arguments regarding the ambiguity of the Tail Provisions for the sake of completeness.

**C. The record does not support Delclaux's argument that the Tail Provisions are unambiguous and its derivative request for judgment as a matter of law on the Amended Counterclaim.**

As noted above, Delclaux divides its counterclaim for finder's fees into fees pursuant to the First Tail; and fees pursuant to the Second Tail.  See Delclaux's Motion for Summary Judgment [D.E. 70 at 7–8].[6]

---

[6] Due to procedural irregularities, the undersigned has rejected the claim for fees under the Third Tail.

11

The First Tail provides, in relevant part, that an amount is due and payable to LionTree if "at any time prior to 180 days following the end of the [t]erm [of the LionTree Agreement], [AST] enters into an agreement with any third party that subsequently results in a Transaction, or a Transaction is consummated". See LionTree Agreement [D.E. 17-1 at 3].[7]

Under the Second Tail, an amount is due and payable to LionTree if,

> at any time on or after 180 days from the end of the [t]erm [of the LionTree Agreement] and prior to the expiration of 12 months following the end of the [t]erm, [AST] enters into an agreement with a third party that was introduced by [AST] or LionTree, or where contact was developed or pursued by [AST] or LionTree, during the [t]erm . . . and that subsequently results in a Transaction, or a Transaction is consummated with this third party . . . .

Id. Delclaux argues that both provisions are clear and unambiguous. See Delclaux's Response [D.E. 77 at 13].

As to the First Tail, Delclaux contends that AST entered into non-disclosure agreements with Vodafone, American Tower, Rakuten, and Samsung during the tail period and that all four non-parties ultimately invested in AST, thereby triggering Delclaux's right to fees thereunder. Id. at 14; see also Delclaux's Motion for Summary Judgment [D.E. 70 at 9–11]. As to the Second Tail, Delclaux claims that during the term of the LionTree Agreement, LionTree pursued contact with Vodafone and Samsung and AST pursued a meeting with Rakuten, all of which constitute the development or pursuit of contact under the Second Tail sufficient to trigger Delclaux's right to fees thereunder. See Delclaux's Motion for Summary Judgment [D.E. 70 at 11–12]; Delclaux's Response [D.E. 77 at 14–15]. However, Delclaux fails to support with record evidence its contentions that the First Tail specifically contemplated the execution of non-disclosure agreements or that the Second Tail contemplated the contacts Delclaux describes.

---

[7] The LionTree Agreement defines "Transaction" as follows: "[T]he term 'Transaction' means, whether effected directly or indirectly or in one transaction or a series of transactions, any issuances and sales of Interests." See LionTree Agreement [D.E. 17-1 at 2].

Conversely, AST argues that the Tail Provisions are ambiguous. See AST's Corrected Motion for Summary Judgment [D.E. 74 at 17]; AST's Response [D.E. 80 at 8–13]. The parties do not dispute that the LionTree Agreement is governed by New York law, which provides that a contract is ambiguous when it is susceptible to more than one reasonable interpretation. See Cap. Dist. Enters., LLC v. Windsor Dev. of Albany, Inc., 861 N.Y.S.2d 816, 819 (3d Dep't 2008). When the terms of a contract are ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." Bank of New York Tr. Co., N.A. v. Franklin Advisers, Inc., 726 F.3d 269, 276 (2d Cir. 2013) (internal quotation marks and citations omitted). AST argues that the First and Second Tails are susceptible to more than one reasonable interpretation. See AST's Corrected Motion for Summary Judgment [D.E. 74 at 17]. As to the First Tail, AST contends that the term "agreement" in the First Tail is ambiguous. While Delclaux counters that a non-disclosure agreement satisfies the definition, see Delclaux's Motion for Summary Judgment [D.E. 70 at 7], AST counters that "it is certainly not the only permissible construction" of the term, as a "legally binding, definitive agreement[] that set[s] forth the key terms and conditions of an investment" may also fall within the ambit of the term "agreement." See AST's Corrected Motion for Summary Judgment [D.E. 74 at 18]. AST concludes that, given this ambiguity, Delclaux cannot be entitled to fees as AST did not enter any legally binding, definitive agreements with Vodafone, American Tower, Rakuten, and Samsung during the First Tail period. Furthermore, AST argues that the terms "introduction", "contact", and "developed or pursued" in the Second Tail are also ambiguous. While Delclaux claims that "sending [Vodafone and Samsung] an AST teaser and then calling each of them about the investment", introducing AST to Vodafone, and pursuing a meeting with Rakuten are sufficient to satisfy the Second Tail, see Delclaux's Motion for Summary Judgment

[D.E. 70 at 8], AST argues that the provision ultimately requires efforts that "causally contribute to a Transaction". See AST's Corrected Motion for Summary Judgment [D.E. 74 at 19]. Thus, according to AST, nothing has occurred to trigger an undisputed right to fees under the Second Tail.

Having considered the foregoing arguments, the undersigned agrees with AST that the First and Second Tails are ambiguous, thereby requiring the consideration of extrinsic evidence to ascertain the parties' intent. AST proffers, in part, the Expert Report of Jim Timmins ("Mr. Timmins") (hereafter, "Timmins Expert Report"),[8] wherein Mr. Timmins opines that industry standards and established custom and practice provide that the First Tail can only be triggered "by an investment transaction that closed or by the execution of a binding contract setting forth the terms and conditions of an investment transaction" and never by a non-disclosure agreement, as a non-disclosure agreement does not confer the same protections on an investment bank for "work that occurred during its period of exclusivity". See AST's Corrected Motion for Summary Judgment [D.E. 74 at 20–21] (quoting Timmins Expert Report [D.E. 72-8 ¶¶ 21(a), 56]).[9] Mr. Timmins also opines that industry custom and practice establish that the Second Tail would require "an introduction to a potential investor or for an existing contact with a potential investor to be further developed or pursued" such that the activity "contributes in some way to an investment (or acquisition) eventually being closed." Id. at 22 (quoting Timmins Expert Report [D.E. 72-8 ¶ 62]).

---

[8] On October 13, 2022, the undersigned issued an Order on Delclaux's Motion to Strike [D.E. 69] wherein Delclaux sought to strike the Expert Report of Henry Sanchez, Jr. and the Timmins Expert Report proffered by AST. With respect to the Timmins Expert Report, the undersigned reasoned that it would be premature to strike it prior to determining whether the Tail Provisions are ambiguous in the context of summary judgment. See Daubert Order [D.E. 110 at 8].

[9] AST also proffers the Declaration of Thomas Severson as extrinsic evidence in favor of its contract interpretation. See Decl. of Thomas Severson [D.E. 72-2]. The undersigned notes Delclaux's argument that this is a sham declaration, see Delclaux's Response [D.E. 77 at 16], but needs not reach the merits of this argument considering the strength of the remaining record evidence on which AST relies in support of its position, including the Timmins Expert Report.

14

Notably, AST states that "all four investors have testified unequivocally that LionTree had nothing to do with their respective investments." Id. at 24.

In its opposition, Delclaux falls short of its obligation under Fed. R. Civ. P. 56(c)(1)(A) to cite to particular parts of the record that support its characterization of the Tail Provisions as unambiguous. Instead, Delclaux claims, without support, that "AST's argument that the term 'agreement' [in the First Tail] really means 'investment agreement' makes no sense as transactions generally close on the date of the agreements." See Delclaux's Response [D.E. 77 at 14].[10] Delclaux also claims that all that is required under the Second Tail is "the pursuit or development of contact with the investor or the introduction of the investor and that the investor invested in AST in the period covered by the tail." Id. at 15. However, these bald assertions, without more, are insufficient to support Delclaux's claim that the Tail Provisions are unambiguous, let alone that summary judgment is proper for Delclaux on its Amended Counterclaim for fees. As AST points out in support of its position, "[s]ummary judgment should [] be granted 'if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language.'" See AST's Corrected Motion for Summary Judgment [D.E. 74 at 13] (citing Compagnie Financiere de CIC et de l'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 158 (2d Cir. 2000)). Given that Delclaux has failed to point to any relevant extrinsic evidence supporting its interpretation of the Tail Provisions, the undersigned concludes that Delclaux is not entitled to summary judgment on its Amended Counterclaim. Instead, summary judgment in favor of AST on the Amended Counterclaim is warranted on the basis that

---

[10] Delclaux submitted the Declaration of Pedro Delclaux ("Mr. Delclaux"), Delclaux's President, as an attachment to its Response Statement. See Decl. of Pedro Delclaux [D.E. 78-3]. Therein, Mr. Delclaux baldly claims that "[i]t is usual in the private placement market for securities for the investment to be made on the same day that the investment or purchase agreement is signed". Id. ¶ 5. Even assuming that this statement can be taken at face value, Delclaux is silent as to how it has any bearing on whether a non-disclosure agreement indisputably satisfies the terms of the First Tail.

15

the extrinsic evidence supporting its interpretation of the Tail Provisions is undisputed.  Merrill Lynch, 232 F.3d at 158.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Delclaux's Motion for Summary Judgment [D.E. 70] be DENIED, that AST's Corrected Motion for Summary Judgment [D.E. 74] be GRANTED, and that JUDGMENT BE ENTERED in favor of AST as to Delclaux's Amended Counterclaim.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 12th day of December, 2022.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc: United States District Judge Darrin P. Gayles
    Counsel of Record